# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| TIMOTHY WAYNE MATSON, ) | |
| ) | |
| Plaintiff, ) | 4:11CV3214 |
| ) | |
| vs. ) | ORDER |
| ) | |
| MICHAEL J. ASTRUE, Commissioner of ) | |
| Social Security Administration, ) | |
| ) | |
| Defendant. ) | |

This is an action for judicial review of a final decision of the Commissioner of the Social Security Administration (the Commissioner).[1] The plaintiff Timothy Wayne Matson (Matson) appeals the Commissioner's decision denying Matson's application for Supplemental Security Income (SSI) benefits under Title XVI of the Social Security Act (Act), 42 U.S.C. §§ 1381, *et seq.* Matson alleges he was disabled October 31, 2008, due to back and heart problems, breathing difficulties, and borderline intellectual functioning. Matson filed a brief (Filing No. 18) in support of this administrative appeal. The Commissioner filed the administrative record (AR.) (Filing No. 13) and a brief (Filing No. 21) in opposition of Matson's appeal for benefits. Matson did not file a reply brief.

## BACKGROUND

On October 16, 2009, Matson filed an application for SSI benefits alleging he had been unable to work due to a disabling condition beginning October 31, 2008 (AR. 11, 46-49). In the application, Matson alleged he was disabled due to coronary artery disease and borderline intellectual functioning (AR. 46-49). The Commissioner denied benefits initially and on reconsideration (AR. 52-53). An Administrative Law Judge (ALJ) held a hearing on January 20, 2011 (AR. 54). On February 17, 2011, the ALJ determined Matson was not disabled within the meaning of the Act (AR. 8-21). Matson appealed the ALJ's determination (AR. 4-7). The Appeals Council denied Matson's request for review on

---

[1] The parties consented to jurisdiction by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). See Filing No. 17.

September 29, 2011 (AR. 1-3). Matson now seeks judicial review of the ALJ's determination as it represents the final decision of the Commissioner.

Matson appeals the Commissioner's decision, asking that the decision be reversed and benefits awarded because: (1) the ALJ failed to include the impact of Matson's mental difficulties related to concentration, persistence, and pace in the hypothetical questions and (2) the ALJ failed to orient the vocational expert to the totality of Matson's standing limitations. See [Filing No. 18](#) - Brief p. 3-4. After reviewing the ALJ's decision, the parties' briefs, the record, and applicable law, the court finds the ALJ's ruling, that Matson was not disabled, should be affirmed because substantial evidence in the record supports the decision.

## ADMINISTRATIVE RECORD

**A.   Medical Records**

Matson attended school in the McCook Public School system (AR. 285-287). On April 11, 1979, the school psychologist, Jack Dodge, Ph.D. (Dr. Dodge), evaluated Matson for special education assistance (AR. 285-287). Dr. Dodge concluded Matson was "Educable Mentally Handicapped" and qualified for special education assistance (AR. 285-287). Dr. Dodge performed a psychological evaluation of Matson on October 22, 1979, September 8, 1982, and September 24, 1985 (AR. 285). On October 22, 1979, Dr. Dodge assigned Matson a verbal IQ of 70, a performance IQ of 84, and a full scale IQ of 75 (AR. 285). Dr. Dodge assigned Matson a verbal IQ of 64, a performance IQ of 77, and a full scale IQ of 67 on September 8, 1982 (AR. 285). On September 24, 1985, at which point Matson was in tenth grade, Dr. Dodge assigned Matson a verbal IQ of 69, a performance IQ of 81, and a full scale IQ of 73 (AR. 285).

Matson's physical health issues began on December 31, 2007, when Matson was admitted to the McCook Clinic, P.C. (McCook Clinic) for evaluation of chest pain, nausea and cholesterol levels (AR. 329-330). As part of his family and social history, Matson reported his family has a history of heart attacks, he drank caffeine, occasionally drank alcohol, and smoked ten to fifteen cigarettes a day (AR. 329-330). Corine Phillips-Ward,

M.D. (Dr. Phillips-Ward), diagnosed Matson with an acute myocardial infarction and had Matson transported to Good Samaritan Hospital (AR. 330).

Good Samaritan Hospital admitted Matson on December 31, 2007 (AR. 297). Azariah M. Kirubakaran, M.D. (Dr. Kirubakaran), attended Matson (AR. 297). Dr. Kirubakaran noted Matson smoked cigarettes and did not exercise regularly but has always been active (AR. 297). Dr. Kirubakaran performed a coronary artery bypass grafting operation (bypass operation) (AR. 297). There were no complications with the bypass operation and, after good progress with recovery, Matson was discharged on January 5, 2008 (AR. 297). Dr. Kirubakaran recommended Matson begin cardiac rehabilitation after one month (AR. 297).

On January 22, 2008, Matson attended a follow-up appointment after his bypass operation (AR. 331-332). Mark Serbousek, M.D. (Dr. Serbousek), noted Matson was "doing well and denie[d] acute complaints" (AR. 331). Dr. Serbousek noted Matson continued to smoke cigarettes (AR. 331). Dr. Serbousek diagnosed Matson with stable coronary artery disease (CAD) and ongoing tobacco dependence (AR. 332). Dr. Serbousek recommended Matson quit smoking, exercise regularly, and modify his diet (AR. 332). Dr. Serbousek noted Matson "did not seem very responsive to discussing cessation [of smoking] however" (AR. 332).

On March 12, 2008, Matson had an appointment at McCook Clinic because of cold symptoms (AR. 333). Katie Lawson, PA-C, diagnosed Matson with an acute upper respiratory infection and prescribed medication (AR. 333). On April 16, 2008, Matson visited the McCook Clinic because of nausea, diarrhea, and right leg pain (AR. 335). Dr. Phillips-Ward released Matson from work and prescribed medications to address Matson's symptoms (AR. 335-336).

On June 3, 2009, Matson saw Dr. Serbousek at the McCook Clinic (AR. 339). Matson complained of chronic pain in his sternal area and reported his rib cage slides and pops when he lies down (AR. 339). Matson also complained of right leg numbness (AR. 339). Matson reported he has no insurance and therefore does not take medication and has not seen Matson's cardiologist in over a year (AR. 339). Dr. Serbousek noted Matson continued to smoke ten to fifteen cigarettes a day and occasionally used alcohol (AR. 339).

Dr. Serbousek noted Matson was in no acute distress and diagnosed CAD, hyperlipidemia, and musculoskeletal chest pain and recommended to Matson that he take medication (AR. 340). Dr. Serbousek provided Matson documents to allow Matson to claim indigent care to receive medication and noted Matson "doesn't seem too motivated to find another job" (AR. 340).

On July 20, 2009, Sean Denney, M.D. (Dr. Denney), a cardiologist at the McCook Cardiology Clinic, examined Matson (AR. 218-219). Matson reported fatigue, chest pain, and "sternal popping" (AR. 218). Matson reported he continued to smoke a half- to three-quarters-pack of cigarettes a day (AR. 218). Dr. Denney noted Matson's heart rate and rhythm were regular, there was "no appreciable popping," and "not much in the way of palpable pain elicited on physical exam" (AR. 218). Dr. Denney diagnosed Matson with CAD with improvement, tobaccoism, hypertension, and dyslipidemia (AR. 218). In reference to Matson's medical complaints, Dr. Denney noted Matson may have "some secondary gain (sic) issues," but Dr. Denney will continue to monitor Matson's chest discomfort (AR. 219). On July 22, 2009, Dr. Denney conducted an echocardiogram because of Matson's complaints of chest pain (AR. 221). The results of the echocardiogram were normal (AR. 221).

On July 28, 2009, Gerald Spethman, M.D. (Dr. Spethman), a Disability Determination Services (DDS) physician, conducted a physical residual functional capacity (RFC) assessment of Matson based on the medical record (AR. 381-388). Dr. Spethman noted Matson's primary diagnoses was CAD (AR. 381). Dr. Spethman determined Matson could lift up to twenty-five pounds frequently and up to fifty pounds occasionally, could stand and walk for about six hours in an eight-hour workday, could sit for about six hours in an eight-hour work day, and could push and pull with no limitations (AR. 381). Dr. Spethman noted Matson did not have postural, manipulative, visual, or communicative limitations (AR. 383-384). Dr. Spethman also noted Matson should avoid concentrated exposure to fumes, odors, dusts, gases, poor ventilation, and extreme cold and heat (AR. 385). Dr. Spethman concluded Matson was "partially credible" because Matson had not previously reported back pain or leg problems (AR. 388). Additionally, Dr. Spethman noted Matson did not take medication and continued to smoke (AR. 388). Dr. Spethman

determined Matson "appear[ed] capable of work activity as outlined in [the] RFC" (AR. 388).

On August 24, 2009, Matson had an appointment with Dr. Denney (AR. 220). Matson reported he felt "quite good" and Dr. Denney noted Matson's improvement (AR. 220). Dr. Denney assessed Matson with stable coronary heart disease with improvement, tobaccoism, hypertension, and dyslipidemia and recommended another follow-up appointment in three months (AR. 220).

On October 16, 2009, Dr. Phillips-Ward saw Matson for complaints of a lesion on Matson's back (AR. 225). Dr. Phillips-Ward noted Matson was pleasant and in no apparent distress (AR. 225). Dr. Phillips-Ward diagnosed Matson with a pilonidal cyst and referred Matson to a surgeon, Walter Eskildsen, M.D. (Dr. Eskildsen), for removal of the cyst (AR. 225). On October 19, 2009, Dr. Eskildsen removed the cyst from Matson's back without complications (AR. 232).

On November 5, 2009, Lisa Matson (Mrs. Matson) completed a Third Party Function Report and Daily Activities and Symptoms Report on Matson's behalf (AR. 154-161). Mrs. Matson reported Matson could walk around the yard and on the sidewalk but no more than one block (AR. 154). The Matsons both take care of the children and shop together most of the time (AR. 154). Matson does not read and mostly watches television (AR. 154). Depending on his leg, Matson will go to his daughter's sporting events (AR. 154). Matson responds well to criticism and supervision but does not adjust well to changes (AR. 155). On an average day Matson will eat, sleep, watch television, and walk around the yard (AR. 156). Matson is able to mow the lawn using a riding lawnmower but otherwise cannot do many chores because of his inability to do strenuous activity (AR. 157). Additionally, Mrs. Matson noted Matson has a difficult time standing or sitting (AR. 156). Matson reported he sleeps for only three to four hours a night (AR. 159).

Rebecca Schroeder, Ph.D. (Dr. Schroeder), completed a psychological interview for DDS on December 3, 2009 (AR. 234-242). Dr. Schroeder noted Matson had not been involved in any type of psychological treatment (AR. 236). Matson reported he had chest pain at times, was "doing well" and "feeling good most of the time," but worried about financial issues (AR. 235-237). Matson also reported a respiratory issue that had not been

diagnosed (AR. 235). Matson stated he smoked about one-half-pack of cigarettes a day (AR. 236). Dr. Schroeder noted Matson operated within the borderline range of intellectual functioning but was well-oriented and had no difficulty in understanding the questions asked (AR. 238-241). Dr. Schroeder noted Matson had good communication skills although, at times, his speech would slow and he struggled with maintaining eye contact (AR. 238). Dr. Schroeder noted Matson had some symptoms of an adjustment disorder and anxiety due to his lack of sleep and chest issues (AR. 241). Although Dr. Schroeder concluded Matson may have some mild restrictions in daily functioning, Matson could sustain concentration and attention needed for short task completion (AR. 241). Matson could also understand and remember short and simple instructions and carry out tasks (AR. 241). Dr. Schroeder added Matson could relate appropriately to coworkers and supervisors and could adapt to changes in his environment (AR. 241). Matson achieved a verbal IQ of 81, a performance IQ of 81, and a resulting full scale IQ of 79 (AR. 239). Dr. Schroeder diagnosed Matson with an adjustment disorder (AR. 242).

On December 28, 2009, Lee Branham, Ph.D. (Dr. Branham), a DDS psychologist completed a Psychiatric Review Technique form (PRT) and Mental Residual Functional Capacity Assessment (MRFCA) (AR. 243-261). Dr. Branham noted Matson had an adjustment disorder with borderline intellectual functioning (AR. 246-247). Dr. Branham noted Matson had a mild restriction on activities of daily living and in maintaining concentration, persistence, or pace, and had one or two episodes of decompensation (AR. 254). Dr. Branham noted Matson did not have difficulties in maintaining social functioning and was moderately limited only in understanding and remembering detailed instructions and carrying out detailed instructions (AR. 254, 257). In all other categories, Dr. Branham concluded Matson was not significantly limited (AR. 257-258). Dr. Branham concluded some of Matson's limitations could produce the limitations alleged but Matson was only partially credible because Matson's medical records do not support the severity of Matson's complaints (AR. 259).

On December 29, 2009, Glen Knosp, M.D. (Dr. Knosp), completed a RFC assessment (AR. 262-270). Dr. Knosp noted Matson's primary diagnosis was CAD and his secondary diagnosis was cardiomyopathy (AR. 262). Dr. Knosp determined Matson

could lift up to twenty-five pounds frequently and up to fifty pounds occasionally, could stand and walk for about six hours in an eight-hour workday, could sit for about six hours in an eight-hour work day, and could push and pull with no limitations (AR. 263). Dr. Knosp noted Matson did not have postural, manipulative, visual, or communicative limitations (AR. 383-384). Dr. Knosp noted Matson should avoid concentrated exposure to: extreme cold and heat; fumes, odors, dusts, gases, and poor ventilation; and hazards such as machinery and heights (AR. 266). Dr. Knosp found Matson partially credible and noted the medical evidence of record did not support Matson's allegations of severe sitting, standing, and walking limitations (AR. 269). Dr. Knosp concluded the medical evidence showed improvement but Matson still had limitations as set forth in the RFC (AR. 269).

On March 9, 2010, Matson saw Stelian Andreca, M.D. (Dr. Andreca), for a physical examination (AR. 271). Matson complained of back and leg pain (AR. 271). Dr. Andreca noted Matson's heart rate was normal and Matson's incision scar from the bypass operation over his sternum appeared stable (AR. 271). Dr. Andreca noted Matson's ability to walk and walk on his heels and toes was normal (AR. 271). Dr. Andreca noted, with the exception of the flexion of the right knee which was decreased, Matson's physical condition appeared "unremarkable" (AR. 271).

On April 1, 2012, Patricia Newman, Ph.D. (Dr. Newman), completed a PRT (AR. 274-275). Dr. Newman noted Matson did not present new evidence since Dr. Branham's PRT evaluation and affirmed Dr. Branham's evaluation (AR. 274-275). Also on April 1, 2012, Steven G. Higgins, M.D. (Dr. Higgins), completed a physical RFC (AR. 276-284). Dr. Higgins noted Matson's primary diagnosis was Degenerative Disc Disease (DDD) of the Lumbar Spine and CAD and a secondary diagnosis of cardiomyopathy (AR. 276). Dr. Higgins determined Matson could lift up to ten pounds frequently and up to twenty pounds occasionally, could stand and walk for about six hours in an eight-hour workday, could sit for about six hours in an eight-hour work day, and could push and pull with no limitations (AR. 277). Dr. Higgins noted Matson did not have manipulative, visual, or communicative limitations (AR. 279-280). Dr. Higgins noted Matson could only occasionally climb, balance, stoop, kneel, crouch, and crawl (AR. 278). Dr. Higgins noted Matson should avoid concentrated exposure to: extreme cold and heat; fumes, odors, dusts, gases, and

poor ventilation; vibration; and hazards such as machinery and heights (AR. 280). Dr. Higgins noted Matson was alert and oriented and could walk normally and perform a heel/toe walk (AR. 283). Dr. Higgins concluded Matson is suffering from severe DDD, CAD with cardiomyopathy, hypertension, and hyperlipidemia (AR. 283). Dr. Higgins concluded although Matson could not perform heavy lifting due to Matson's heart condition and back and knee pain, Matson could perform work within the parameters of the RFC (AR. 283).

**B.     Administrative Hearing**

At his administrative hearing on January 20, 2011, Matson testified he was forty-one years old and lives with his brother's family (AR. 30-31). Matson attended school through the twelfth grade and received his high school diploma (AR. 31). Matson was enrolled in special education courses and testified he cannot read, write, or use a computer (AR. 31). Matson is married, but is currently going through a divorce (AR. 30). Matson does not have a driver's license because of a recent driving under the influence (DUI) charge (AR. 30-31).

In the past twenty years, Matson worked for a lawn company and more recently worked at Parker Hanathin (Parker) as a hose inspector (AR. 33). In early 2008, Matson underwent open heart surgery (AR. 34-35). After the surgery, Matson returned to light duty work at Parker (AR. 35). Matson was eventually laid off in October 2008 (AR. 32-33, 35). Matson's last job was with Parker although he has received $1,800 in 2009 from unemployment benefits (AR. 32).

Matson takes four different medications for his medical issues (AR. 33). Matson stated his heart doctor in Kearney, Nebraska, prescribes Matson's medication (AR. 33-34). Matson's treating doctor is Dr. Phillips-Ward, although Matson does not recall the last time he saw a doctor (AR. 33-34). A typical day for Matson consists of watching television, having his brother take Matson to the grocery store, and then watching more television (AR. 34). Matson occasionally does the laundry but his brother's children do most of the housework (AR. 34). Matson does not belong to any clubs or organizations (AR. 34). Matson testified he has not consumed alcohol since his DUI but smokes a pack of cigarettes a day (AR. 40).

Matson testified he cannot work because his legs and back "go numb" and his chest "feels pretty heavy" (AR. 33). Matson can only sit in his recliner for twenty minutes before his back "goes numb" and he feels uncomfortable (AR. 37). Matson's pain level on a scale of one to ten, ten being the maximum, is at a seven or eight if Matson sits too long (AR. 37). After getting out of a recliner and walking around, Matson's pain level reduces to a four or five (AR. 37). However, Matson can only walk around a block before he starts having breathing problems (AR. 36). Matson does not think he can perform his past work because he cannot stand all the time (AR. 39).

Denise Waddell, a vocational expert (VE), testified in response to the ALJ's hypothetical questions outlining Matson's age, education, work experience, and work related limitations (AR. 40-45). The ALJ limited the hypothetical individual to perform light exertional work with occasional climbing, balancing, stooping, kneeling, crouching, and crawling (AR. 41). Additionally, the individual would have to avoid exposure to extreme cold and heat; excessive vibration; irritants such as fumes, odors, dust, gases, and poor ventilation; operational control of moving machinery; and unprotected heights (AR. 41). Lastly, the individual is limited to simple, routine, repetitive tasks with no requirement of reading (AR. 41). The VE testified the hypothetical individual could not perform past relevant work (AR. 41). However, the VE testified the individual could work in the national and regional economy (AR. 41). Specifically, the hypothetical individual could function as a small parts assembler, connector assembler, and collator operator at the light exertional level (AR. 41-42). The VE testified there are 840 jobs as a small parts assembler within Nebraska and 125,000 jobs in the United States; 550 jobs as a connector assembler within Nebraska and 59,400 jobs in the United States; and 350 jobs as a small parts assembler within Nebraska and 29,000 jobs in the United States (AR. 41-42). The VE testified these jobs are consistent with the Dictionary of Occupational Titles (DOT) (AR. 42). The VE testified work as a small parts assembler and collator operator required standing for six hours in an eight-hour workday (AR. 42). The VE testified work as a connector assembler has a sit or stand option (AR. 42).

Matson's attorney asked the VE a hypothetical question with a variation of the limitations the ALJ set forth (AR. 43). Matson's attorney asked the VE if the individual

9

could work full-time if the individual could only walk a block due to loss of breath, could only sit for a period of time before moving, could not perform normal activity like walking or chores, and has problems with bending or stooping (AR. 43). The VE testified the individual could not work full-time with such limitations (AR. 43).

## THE ALJ'S DECISION

The ALJ concluded Matson was not disabled under the Act and was not entitled to any SSI disability benefits (AR. 11). The ALJ framed the issue as whether Matson was eligible for benefits as a disabled individual under § 1614(a)(3)(A) of the Act since October 31, 2008 (AR. 11). The ALJ defined disability as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment or combination of impairments that can be expected to result in death or last for a continuous period of not less than twelve months (AR. 12). **See** 42 U.S.C. § 423; 20 C.F.R. § 404.1505. The ALJ determined Matson met the insured status requirements of the Act (AR. 13).

The ALJ must evaluate a disability claim according to the sequential five-step analysis established by the Social Security regulations. **See** 20 C.F.R. § 404.1520(a)-(f); *Jones v. Astrue*, 619 F.3d 963, 968 (8th Cir. 2010).

> During the five-step process, the ALJ considers (1) whether the claimant is gainfully employed, (2) whether the claimant has a severe impairment, (3) whether the impairment meets the criteria of any Social Security Income listings, (4) whether the impairment prevents the claimant from performing past relevant work, and (5) whether the impairment necessarily prevents the claimant from doing any other work.

*Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (citation omitted); **see** *Kluesner v. Astrue*, 607 F.3d 533, 536 (8th Cir. 2010). More specifically, the ALJ examines:

> [A]ny current work activity, the severity of the claimant's impairments, the claimant's residual functional capacity and age, education and work experience. **See** 20 C.F.R. § 404.1520(a). If the claimant suffers from an impairment that is included in the listing of presumptively disabling impairments (the Listings), or suffers from an impairment equal to such listed impairment, the claimant will be determined disabled

> without considering age, education, or work experience. If the Commissioner finds that the claimant does not meet the Listings but is nevertheless unable to perform his or her past work, the burden of proof shifts to the Commissioner to prove, first, that the claimant retains the residual functional capacity to perform other kinds of work, and, second, that other such work exists in substantial numbers in the national economy. A claimant's residual functional capacity is a medical question.

*Singh v. Apfel*, 222 F.3d 448, 451 (8th Cir. 2000) (internal citations omitted). "If a claimant fails to meet the criteria at any step in the evaluation of a disability, the process ends and the claimant is determined to be not disabled." *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006) (citation omitted); **see** *Kluesner*, 607 F.3d at 536.

In this case, the ALJ followed the appropriate sequential analysis. At step one, the ALJ found Matson had not engaged in any substantial gainful activity since October 31, 2008 (AR. 13). At step two, the ALJ determined Matson had the following severe impairments as defined by Social Security regulations: status post coronary angiography, CAD, tobacco dependence, borderline intellectual functioning, adjustment disorder, and DDD (AR. 13). The ALJ noted the listed impairments cause Matson more than minimal limitations in Matson's ability to perform basic work activities (AR. 13). The ALJ determined Matson's other alleged impairments of pilonidal cyst, hypertension, and gastroesophageal reflux disease were non-severe (AR. 13).

At the third step, the ALJ determined Matson does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926) (AR. 14). Before proceeding to step four of the sequential evaluation process, the ALJ determined Matson's ability to perform work-related functions, or a residual functional capacity, is limited to the following:

> light work as defined in 20 CFR 404.1567(b) and 416.967(b) except for the following nonexertional limitations that further reduce the claimant's ability to perform light work: occasional climbing, balancing, stooping, kneeling, crouching, and crawling; avoid concentrated expose to extreme cold, extreme heat, excessive vibration, and irritants such as fumes, odors, dust, gases, and poorly ventilated areas; avoid concentrated exposure to operational controls, moving machinery, and

11

> unprotected heights; and limited to simple, routine, repetitive tasks with no requirement of reading in the performance of job duties

(AR. 15).

The ALJ gave great weight to Dr. Branham's RFC opinion and Dr. Schroeder's psychological evaluation because the opinions were consistent with the evidence (AR. 18-19). The ALJ also gave weight to Dr. Higgins' opinion because the opinion was consistent with the objective medical evidence and with Matson receiving minimal amounts of medical treatment (AR. 19). Dr. Higgins limited Matson to light work with postural and environmental limitations (AR. 19).

The ALJ gave only "some weight" to Dr. Knosp's opinion because the evidence in the record at the hearing level showed Matson was more restricted than Dr. Knosp opined (AR. 19). The ALJ gave little weight to Drs. Branham's and Newman's PRT opinions because the evidence in the record supported greater restrictions than those opined (AR. 14). The ALJ gave little weight to Ms. Matson's third party function report (AR. 19). The ALJ found Ms. Matson's statements were inconsistent with the minimal amount of medical treatment Matson received (AR. 19). The ALJ noted Mrs. Matson's statement to Dr. Denney that Matson was "doing well" was inconsistent with the third party function report completed November 5, 2009. (AR. 19).

The ALJ found Matson's medically determinable impairments could reasonably be expected to cause Matson's alleged symptoms; however, the ALJ found Matson's statements regarding the intensity, persistence, and limiting effects of such symptoms were not credible to the extent Matson's statements are inconsistent with the ALJ's RFC assessment (AR. 16). Specifically, the ALJ noted Matson "had relatively little treatment for his severe impairments" (AR. 16). Further, the ALJ noted "[t]here is no indication in the record that [Matson] underwent cardiac rehabilitation as recommended by his doctors" (AR. 17). The ALJ determined "[Matson's] lack of compliance with taking his medications does not support his allegations regarding the severity of limitations that result from [Matson's] CAD" (AR. 17).

The ALJ wrote "[a]fter [Matson's appointment with Dr. Denny July 20, 2009], there is no indication [Matson] sought any additional treatment for his heart condition" (AR. 17).

The ALJ determined "Dr. Denny's notation regarding secondary gain significantly detracts from the credibility of [Matson's] allegations" (AR. 17). Further, the ALJ noted, "[a]gainst the recommendations of [Matson's] doctors, [he] has continued to smoke," which "weighs heavily against [Matson's] allegation that he has difficulty breathing because of CAD" (AR. 17). The ALJ noted Matson "never sought treatment for DDD" and "has never been prescribed any pain medications for the treatment of [Matson's] DDD" which "detracted from the credibility of [Matson's] allegations" (AR. 17). The ALJ concluded "the near-sedentary existence which [Matson] described at the hearing is shown by the overall record to be self-imposed" (AR. 18). Further, the ALJ concluded, "there is no evidence that any physician has placed any limitations on [Matson's] ability to work" (AR. 18).

At step four of the sequential evaluation process, the ALJ determined Matson is unable to perform his past relevant work (AR. 19). At the final step in the process, the ALJ determined jobs exist in significant numbers in the national economy that Matson can perform (AR. 20). The ALJ relied upon the VE's testimony finding a person of Matson's age, education, work experience, and RFC could perform light, unskilled work as a small parts assembler, connector assembler, and collator operator (AR. 20). The ALJ determined that because Matson could perform unskilled light labor, Matson was not disabled (AR. 20-21).

Matson appeals the Commissioner's determination on two grounds. **See** Filing No. 18 - Brief p. 3-4. First, Matson argues the ALJ failed to include the impact of Matson's mental difficulties related to concentration, persistence, and pace in the hypothetical questions. *Id.* Second, Matson argues the ALJ failed to orient the VE to the totality of Matson's standing limitations. *Id.*

### STANDARD OF REVIEW

A district court is authorized jurisdiction to review a decision to deny disability benefits according to 42 U.S.C. § 405(g). **See also** 42 U.S.C. § 1383(c)(3). A district court is to affirm the Commissioner's findings if "supported by substantial evidence on the record as a whole." *Johnson v. Astrue*, 628 F.3d 991, 992 (8th Cir. 2011). Substantial evidence is defined as less than a preponderance, but enough that a reasonable mind might accept

it as adequate to support a decision. *Jones v. Astrue*, 619 F.3d 963, 968 (8th Cir. 2010); **see also** *Minor v. Astrue*, 574 F.3d 625, 627 (8th Cir. 2009) (noting "the 'substantial evidence on the record as a whole' standard requires a more rigorous review of the record than does the 'substantial evidence' standard"). "If substantial evidence supports the decision, then [the court] may not reverse, even if inconsistent conclusions may be drawn from the evidence, and even if [the court] may have reached a different outcome." *McNamara v. Astrue*, 590 F.3d 607, 610 (8th Cir. 2010). "[I]t is the court's duty to review the disability benefit decision to determine if it is based on legal error." *Nettles v. Schweiker*, 714 F.2d 833, 835-36 (8th Cir. 1983). The court reviews questions of law *de novo*. **See** *Miles v. Barnhart*, 374 F.3d 694, 698 (8th Cir. 2004). Findings of fact are considered conclusive if supported by substantial evidence on the record as a whole. **See** *Nettles*, 714 F.2d at 835; *Renfrow v. Astrue*, 496 F.3d 918, 920 (8th Cir. 2007). Furthermore, "[the court] defer[s] to the ALJ's determinations regarding the credibility of testimony, so long as they are supported by good reasons and substantial evidence." *Pelkey*, 433 F.3d at 578.

## DISCUSSION

Matson argues the ALJ's decision is not supported by substantial evidence because "the ALJ failed to include in the hypotheticals the impact of claimant's mental difficulties related to concentration, persistence and pace" and "the ALJ [failed] to orient the vocational expert to the totality of claimant's limitations including standing." **See** Filing No. 18 - Brief p. 3-4. Matson argues the jobs the VE recommended require Matson to stand for six hours in an eight-hour workday which is beyond Matson's capabilities as he testified he has leg and back issues. *Id.* at 14-15. Additionally, Matson states the VE testified an individual with Matson's sitting, standing, and breathing issues could not work on a full-time basis in the national economy. *Id.* at 5, 6, 7, and 14; AR. 43.

There must be substantial evidence on the record as a whole to support the ALJ's RFC determination. *Davidson v. Astrue*, 578 F.3d 838, 841 (8th Cir. 2009). Substantial evidence is relevant evidence a reasonable mind would accept as adequate to support a decision. *Id.* It is the claimant's burden, rather than the Commissioner's, to prove the

claimant's RFC. *Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010). RFC is the most the claimant can still do despite physical and mental limitations based on the evidence in the case record. 20 C.F.R. § 404.1545(a)(1). The claimant is responsible for providing evidence to establish the RFC. **See** 20 C.F.R. § 404.1545(a)(3). Even so, the ALJ is responsible for developing the complete medical history. *Id.* The ALJ's determination of a claimant's RFC "must be supported by some medical evidence of the claimant's ability to function in the workplace." *Moore v. Astrue*, 572 F.3d 520, 523 (8th Cir. 2009). In addition to the relevant medical evidence, the ALJ bases the RFC assessment on the relevant non-medical evidence including: statements and observations provided by the claimant and claimant's family, friends, or other persons. **See** 20 C.F.R. § 404.1545(a)(3). When considering the claimant's subjective complaints of pain, the ALJ evaluates "1) the claimant's daily activities, 2) the duration, frequency and intensity of pain, 3) precipitating and aggravating factors, 4) the dosage, effectiveness and side effects of any medication, and 5) functional restrictions." *Teague v. Astrue*, 638 F.3d 611, 615 (8th Cir. 2011). When there are inconsistencies in the claimant's testimony, the ALJ may properly discount part of the testimony. *Id.* Similarly, the ALJ may discount conclusions from a medical expert or treating physician if the conclusions are inconsistent with the record as a whole. *Id.* at 615-616. Evidence which both supports and detracts from the decision is considered when determining whether substantial evidence supports the ALJ's decision. *Wildman v. Astrue*, 596 F.3d 959, 964 (8th Cir. 2010).

The ALJ gave great weight to Dr. Schroeder's opinion because the opinion is consistent with the evidence of record (AR. 18-19). Dr. Schroeder concluded Matson could "sustain concentration and attention" (AR. 241). Additionally, on December 3, 2009, Dr. Schroeder assigned Matson a verbal IQ of 81, a performance IQ of 81, and a resulting full scale IQ of 79 (AR. 239). The ALJ determined the December 2009 IQ scores "most valid" and not Matson's high school IQ scores because the more recent IQ scores are consistent with Matson working a semiskilled job for ten years (AR. 15). The ALJ also gave great weight to Dr. Branham's MFRCA opinion wherein Dr. Branham concluded Matson could follow simple instructions and had no marked limitations (AR. 259). The ALJ determined

Dr. Branham's opinion "is consistent with the record as a whole including [Matson's] ability to work at a semiskilled job for several years" (AR. 19).

The ALJ gave weight to Dr. Higgins' opinion because the opinion is consistent with Matson "receiving only a minimal amount of medical treatment" (AR. 19). Dr. Higgins opined Matson's "[g]ait and station and ability to walk were normal" and Matson could "perform work within the parameters of the RFC" (AR. 283). The ALJ gave only some weight to Dr. Knosp's opinion because the ALJ concluded the evidence of record showed Matson was more restricted than Dr. Knosp opined (AR. 19). Although the ALJ considered Mrs. Matson's third party function report, the ALJ gave the report little weight because Ms. Matson's statements were inconsistent with the minimal amount of medical treatment Matson received (AR. 19).

The ALJ determined Matson lacked credibility, which detracted from Matson's allegations regarding the severity of his mental and physical limitations (AR. 17-19). Specifically, the ALJ noted Matson's continuous smoking habit "weighs heavily against [Matson's] allegation that he has difficulty breathing because of his CAD" (AR. 17). The ALJ noted Matson received no treatment or medication for Matson's leg and back issues (AR. 17-18). Further, the ALJ noted Matson did not participate in rehabilitation and exercise as Matson's doctors recommended (AR. 17-18). Lastly, the ALJ stated "Dr. Denney's notation regarding secondary gain detracts from the credibility of [Matson's] allegations" (AR. 17).

The ALJ properly took into account objective medical evidence and Matson's limited treatment, noncompliance with physician's instructions, and an ongoing smoking habit when determining Matson's RFC. "[A]n ALJ may properly consider the claimant's noncompliance with a treating physician's directions, . . . including failing to take prescription medications, . . . seek treatment, . . . and quit smoking." *Choate v. Barnhart*, 457 F.3d 865, 872 (8th Cir. 2006). With consideration to the record as a whole, substantial evidence supports the ALJ's determination to exclude Matson's alleged impairments of standing and concentration, persistence, and pace from Matson's RFC.

Matson further challenges the ALJ's RFC determination arguing the ALJ did not include all of Matson's credible limitations in the ALJ's hypothetical to the VE. **See** Filing

16

No. 18 - Brief p. 3-4. "In fashioning an appropriate hypothetical question for a vocational expert, the ALJ is required to include '*all* the claimant's impairments supported by substantial evidence in the record as a whole.'" *Swope v. Barnhart*, 436 F.3d 1023, 1025 (8th Cir. 2006) (**quoting** *Grissom v. Barnhart*, 416 F.3d 834, 837 (8th Cir. 2005)); **see** *Jones v. Astrue*, 619 F.3d 963, 972 (8th Cir. 2010). The ALJ may rely on vocational expert testimony as "substantial evidence only when the testimony is based on a correctly phrased hypothetical question that captures the concrete consequences of a claimant's deficiencies." *Robson v. Astrue*, 526 F.3d 389, 392 (8th Cir. 2010). The ALJ's hypothetical question must include credible impairments and limitations and does not need to use specific or symptomatic terms to describe the impairments where other descriptive terms can be adequately used. *Gragg v. Astrue*, 615 F.3d 932, 940 (8th Cir. 2010). The ALJ may omit alleged impairments from the hypothetical question when the record does not support the claimant's contention that the impairment is a significant restriction on performing gainful employment. *Buckner v. Astrue*, 646 F.3d 549, 561 (8th Cir. 2011). Similarly, when substantial evidence supports the ALJ's finding that a mental limitation is "nonsevere," the ALJ need not include the mental limitation in the hypothetical. *Id.*

      The hypothetical question posed to the VE in this case included the impairments the ALJ found to be substantially supported by the record as a whole and captured the concrete consequences of Matson's deficiencies due to his heart and back problems, tobacco dependence, borderline intellectual functioning, and adjustment disorder. The ALJ described the hypothetical individual's RFC, identical to Matson's RFC, to the VE as an individual who is:

> capable of performing light exertional level work with occasional climbing, balancing, stooping, kneeling, crouching, and crawling. The individual would need to avoid concentrated exposure to extreme cold, extreme heat, excessive vibration, irritants such as fumes, odors, dust, gases and poorly ventilated areas. The individual would also need to avoid concentrated exposure to operational control, moving machinery and also unprotected heights. This individual is limited to simple, routine, repetitive tasks with no requirement of reading in the performance of job duties.

AR. 41.

The VE listed three jobs an individual with Matson's RFC could perform: small parts assembler, connector assembler, and collator operator (AR. 41-42). The VE testified the jobs exist in a significant number in Nebraska (AR. 41-42). The VE's testimony was based on Matson's impairments the ALJ found credible. The ALJ did not include limitations regarding concentration, persistence, and pace or Matson's ability to stand because, as stated above, the record does not support a finding of Matson's alleged additional limitations. The ALJ's hypothetical was accurate compared to the RFC and the record as a whole. Therefore, the VE's testimony constitutes substantial evidence supporting the ALJ's determination Matson was not disabled under the Act.

## CONCLUSION

Accordingly, the court holds substantial evidence on the record as a whole supports the ALJ's decision. The court therefore concludes the ALJ's decision, which represents the final decision of the Commissioner of the SSA, should not be reversed or remanded and affirms the Commissioner's decision.

**IT IS ORDERED:**

The Commissioner's decision is affirmed, the appeal is denied, and judgment in favor of the defendant will be entered in a separate document.

DATED this 19th day of September, 2012.

BY THE COURT:

s/ Thomas D. Thalken
United States Magistrate Judge